United States District Court
Southern District of Texas
**ENTERED**
October 23, 2026
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| ARACENIA CORTES MENDEZ | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 5:26-cv-992 |
| | § | |
| DAVID COLE *et al.* | § | |

**ORDER**

Before the Court is Petitioner Aracenia Cortes Mendez's Petition for Writ of Habeas Corpus (Dkt. No. 1). For the reasons below, Petitioner's Writ of Habeas Corpus is **DISMISSED WITHOUT PREJUDICE** (Dkt. No. 1).

## I. BACKGROUND

Petitioner is an undocumented alien who entered the United States (Dkt. Nos. 1 at 5; 14 at 2). On July 19, 2016, an Immigration Judge ("IJ") ordered her removed to her home country of Honduras (Dkt. No. 1 at 5; 14 at 2; 14-1 at 1). Approximately eight years after the IJ ordered her removed, Petitioner filed a Form I-918 derivative U Nonimmigrant Status petition (Dkt. No. 1 at 5). While her U visa petition remained pending, on May 26, 2026, ICE arrested her at the Denver International Airport (Dkt. No. 1 at 6). Respondents then transferred her to Laredo, Texas, where she was being held at the Rio Grande Processing Center (Dkt. No. 1 at 6).

Petitioner filed her 28 U.S.C. § 2241 petition seeking her immediate release from custody and to enjoin Respondents from removing her to a third country (Dkt. No. 1 at 13). The same day she filed her habeas petition, she sent ICE her request for stay of removal, although ICE did not receive it until two days after she was removed (Dkt. No. 9 at 4; 14 at 2). While detained, Petitioner alleges that Respondents pressured her to agree to being removed to Mexico (Dkt. No. 1 at 5). However, two days after she filed her petition, on May 31, 2026, ICE deported Petitioner to Honduras, her home country (Dkt.

Nos. 9 at 4; 14 at 2). Without knowledge of the deportation, the Court ordered Respondents to respond to the petition on an expedited basis (Dkt. No. 8). After her removal, Petitioner requested that the Court order Respondents to facilitate her return to the United States (Dkt. No. 9 at 7). Respondents moved to dismiss the petition, asserting that the Court lacked jurisdiction over the claims (*see* Dkt. No. 14). Petitioner filed a reply and a subsequent request that the Court expedite her return (Dkt. Nos. 15, 18).

## II. LEGAL STANDARD

### A. Habeas Petition

Pursuant to 28 U.S.C. § 2241, a district court may grant a writ of habeas corpus to a petitioner in federal custody in violation of the Constitution or federal law. A court entertaining a habeas petition may order "the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained" is not entitled to relief. 28 U.S.C. § 2243. A court need not hold a hearing if the habeas petition "raises only questions of law, or questions regarding the legal implications of undisputed facts." *Tijerina v. Thornburgh*, 884 F.2d 861, 866 (5th Cir. 1989).

### B. Federal Rule of Civil Procedure 12(b)(1)

Under Federal Rule of Civil Procedure 12(b)(1), a party may move for dismissal of a suit for lack of subject matter jurisdiction. "The party asserting jurisdiction 'constantly bears the burden of proof that jurisdiction does in fact exist.'" *Morris v. Thompson*, 852 F.3d 416, 419 (5th Cir. 2017) (quoting *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001)). When considering its subject matter jurisdiction, the Court may consider: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts

evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Ramming*, 281 F.3d at 161 (citing *Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996)).

## III. DISCUSSION

The Court has an "independent obligation to assess [its] own jurisdiction before exercising the judicial power of the United States." *MidCap Media Fin., L.L.C. v. Pathway Data, Inc.*, 929 F.3d 310, 313 (5th Cir. 2019) (citing *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999)); *see also Stinson v. Martinez*, No. 24-30793, 2025 WL 2017872, at *1 (5th Cir. July 18, 2025) (citing *Keyes v. Gunn*, 890 F.3d 232, 235 n.4 (5th Cir. 2018)); Fed. R. Civ. P. 12(h)(3). Respondents argue subject matter jurisdiction is lacking here because: (1) Petitioner's removal mooted her petition; and (2) 8 U.S.C. § 1252(g) strips this Court from reviewing Respondents' decision to remove her (Dkt. No. 14 at 5–7). The Court considers each in turn.

### A. Mooted Claims

"Mootness is 'the doctrine of standing in a time frame. The requisite personal interest that must exist at the commencement of litigation (standing) must continue throughout its existence (mootness).'" *Env't Conservation Org. v. City of Dallas*, 529 F.3d 519, 524 (5th Cir. 2008) (quoting *Ctr. for Individual Freedom v. Carmouche,* 449 F.3d 655, 661 (5th Cir. 2006)). "If a case has been rendered moot, a federal court has no constitutional authority to resolve the issues that it presents." *Id.* (citing *In re Scruggs,* 392 F.3d 124, 128 (5th Cir. 2004)). Essentially, mootness divests the court's subject matter jurisdiction, allowing the court to dismiss a case on its own initiative if jurisdiction is lacking. *Soaring Wind Energy, L.L.C. v. Catic USA Inc.*, 946 F.3d 742, 749 (5th Cir. 2020) (citing *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006)).

In the immigration context, a constitutional challenge to the length of pre-removal detention is mooted by an undocumented alien's removal from the United States. *Francis v. Lynch*, 622 F. App'x 455, 455 (5th Cir. 2015); *Odus v. Ashcroft*, 61 F. App'x 121, 121 (5th Cir. 2003) (unpublished table decision); *Rubio Tercero v. Patterson*, No. 6:26-CV-02495 SEC P, 2026 WL 2175616, at *1 (W.D. La. July 28, 2026). The sole function of habeas "is to grant relief from unlawful imprisonment or custody and it cannot be used properly for any other purpose." *Rice v. Gonzalez*, 985 F.3d 1069, 1070 (5th Cir. 2021) (quoting *Pierre v. United States*, 525 F.2d 933, 935–36 (5th Cir. 1976)). While "collateral consequences" of a conviction can satisfy the in-custody requirement for a criminal habeas petition, the same analysis does not apply "with the same force in the immigration context." *Bacilio-Sabastian v. Barr*, 980 F.3d 480, 483 (5th Cir. 2020); *see Valle Vargas v. De Anda-Ybara*, No. CV 25-834 JB/GBW, 2026 WL 63932, at *4 (D.N.M. Jan. 8, 2026), *report and recommendation adopted sub nom. Valle Vargas v. De Anda-Ybarra*, No. CIV 25-0834 JB/GBW, 2026 WL 256810 (D.N.M. Jan. 30, 2026).

For Petitioner's Count 2, she principally contested the length of her detention, not her underlying removal order (Dkt. No. 1 at 11). Since she "is no longer detained and has been removed from the United States, [her] challenge is now moot." *Francis*, 622 F. App'x at 455. To the extent Petitioner contends that she continues to suffer an ongoing violation based on her previous detention, she fails to demonstrate how habeas relief could redress her injury. *See Hernandez Membreno v. Vergara*, No. 1:26-CV-496-RP, 2026 WL 1045952, at *2 (W.D. Tex. Apr. 14, 2026). (finding an unlawful removal is an injury "caused by the actions of federal officers—not by [Petitioner's] detention itself").

Moreover, Petitioner plainly sought her "immediate[] release" from detention (Dkt. No. 1 at 13). This makes sense as release is the "typical remedy" for wrongful

detention. *Munaf v. Geren*, 553 U.S. 674, 693, (2008) (citing *Hamdi v. Rumsfeld*, 542 U.S. 507, 536, (2004)). Given Petitioner's removal, the Court can no longer grant this relief. "If Petitioner wishes to seek relief for [her] allegedly unlawful removal from the United States, a habeas petition is not the vehicle to do so." *Hernandez Membreno*, 2026 WL 1045952 at *3.

As for Count 3, Petitioner alleged that Respondents would violate both her statutory and constitutional rights if they removed her to Mexico (Dkt. No. 1 at 12). When circumstances change and the court cannot provide the requested relief, the issue becomes moot. *See Students for Fair Admissions, Inc. v. Univ. of Texas at Austin*, 142 F.4th 819, 824 (5th Cir. 2025) (citing *Carmouche*, 449 F.3d at 661). Since Petitioner was removed to Honduras, which was designated in her removal order, her claims concerning third-country removal to Mexico are likewise moot (Dkt. No. 14-1 at 1). This leaves only her Count 1, which the Court addresses next.

**B. ICWC Claim**

On May 20, 2026, a California district court certified a nationwide class for individuals with pending U-visa applications, among other classes, and issued a preliminary injunction staying the Department of Homeland Security's ("DHS") 2025 Guidance. *Immigr. Ctr. for Women & Child. v. Noem*, 351 F.R.D. 324, 397 (C.D. Cal. 2026) ("ICWC"), *appeal filed*, No. 26-3961 (9th Cir.). In *ICWC*, a group of aliens with pending VAWA self-petitions, U-visa petitions and T-visa petitions challenged DHS's 2025 Guidance concerning enforcement actions against aliens with pending victim-based immigration benefit petitions. *Id.* at 348–49. The court described DHS's previous policy as directing ICE to "'refrain from taking civil enforcement action against' individuals 'known to have a pending application' for 'victim-based immigration benefits.'" *Id.* at 353

(citations omitted). DHS's 2025 Guidance rescinded this policy, eliminating its "presumption of protection from immigration enforcement for petitioners for victim-based benefits" and enacting a presumption of enforcement. *Id.* at 354. The Central District of California enjoined the enforcement of DHS's 2025 Guidance and purported to reinstate its prior policy. *Id.* at 397. In doing so, the court did not require that the government release every detainee with a pending victim-based immigration benefit petition, nor did the court require any of the aliens deported be returned. *See id.* at 396–97.

Petitioner asserts she is a member of the Central District of California's class action suit, and her detention and subsequent removal violated the ICWC Order (Dkt. Nos. 1 at 10; 9 at 5). Respondents contend that the Court lacks jurisdiction to order Petitioner's return, and the ICWC Order does not require Petitioner's requested relief (Dkt. No. 14 at 7–9).

*1. 8 U.S.C. § 1252(g)*

Respondents contend that 8 U.S.C. § 1252(g) bars Petitioner's relief for her sole remaining claim (Dkt. No. 14 at 7). The relevant provision provides:

> "Except as provided in this section and notwithstanding any other provision of law . . . , *no court shall have jurisdiction* to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or *execute removal orders* against any alien under this chapter."

§ 1252(g) (emphasis added). "Claims that clearly are included within the definition of *arising from* are those claims connected directly and immediately with a decision" by the government to perform one of the three distinct actions listed in the statute. *Foster v. Townsley*, 243 F.3d 210, 214 (5th Cir. 2001) (citation modified) (citing *Humphries v. Various Fed. USINS Ems*, 164 F.3d 936, 942 (5th Cir.1999)). For example, a district court

cannot stay the government's execution of an order of removal. *Idokogi v. Ashcroft*, 66 F. App'x 526 (5th Cir. 2003) (first citing § 1252(g); then citing *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999)).

Petitioner chiefly relies on *Noem v. Abrego Garcia*, 145 S. Ct. 1017 (2025), to support her desired relief (Dkt. No. 9 at 4; 15 at 2–3; 18 at 3). However, the Court is not convinced that it can order her return based on her cited authority.

For starters, the posture of the instant matter and *Abrgo Garcia* are markedly different. In *Abrgo Garcia*, the government removed an alien to El Salvador, despite him being subject to a withholding order which prohibited the government from removing him there. 145 S. Ct. at 1018. Indeed, in that case, the government acknowledged that plaintiff's removal was illegal. *Id.* Here, Petitioner expressly states that the petition does not challenge her order of removal (Dkt. No. 1 at 3). The removal order clearly orders Petitioner removed to Honduras, which is where Respondents coordinated her return (Dkt. No. 14 at 2). She does not allege that she received any protection, such as withholding of removal, which would have prohibited Respondents from deporting her to her home country. *See L.N. v. Garland*, 109 F.4th 389, 394 (5th Cir. 2024) (discussing the standards for common removal protections).

Moreover, unlike in *Abrgo Garcia*, Respondents here do not concede the legality of Petitioner's removal. Instead, they assert that her removal was legal under the unchallenged final order of removal (*see* Dkt. No. 14 at 2). While the Supreme Court affirmed the district court's order for the government to facilitate the return of Mr. Abrgo Garcia, it noted that requiring the government to effectuate his return "may exceed the District Court's authority" in light of "the deference owed to the Executive Branch in the conduct of foreign affairs." *Abrego Garcia*, 145 S. Ct. at 1018. When considering the

Supreme Court's warning and Congress's limited jurisdictional grant, the Court finds it lacks jurisdiction to consider Plaintiff's Count 1, which necessarily arises out of Respondents decisions to execute a valid removal order. *See Foster*, 243 F.3d at 214.

*2. ICWC Order*

Even if the Court had jurisdiction to consider Petitioner's claim—which it does not—it is not convinced the ICWC order entitles Petitioner to her requested relief. District courts are generally not bound by another district court's rulings, unless res judicata or collateral estoppel applies. *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011). Even then, in the habeas context, the Fifth Circuit has determined that neither preclusive doctrine applies. *Ruz Fuente v. Noem*, No. 4:26-CV-00767, 2026 WL 1270531, at *2 (S.D. Tex. Mar. 20, 2026) (citing *Hardwick v Doolittle*, 558 F2d 292, 295 (5th Cir 1977)).

The ICWC case is still in its early stages, and an appeal of the district court's order remains pending in the Ninth Circuit. It is generally true that "a judgment is entitled to preclusive effect event though an appeal is pending." *Stevens v. St. Tammany Parish Gov't*, 17 F.4th 563, 571 (5th Cir. 2021). However, the ICWC order is a preliminary injunction, not a final judgment. *See ICWC*, 351 F.R.D. at 379 ("The purpose of a preliminary injunction is to preserve the status quo and the rights of the parties until a final judgment on the merits can be rendered."). This means that the Central District of California's preliminary injunction lacks preclusive effect, even absent the Fifth Circuit's guidance. *See Taylor v. Sturgell*, 553 U.S. 880, 892 (2008); *see also Tejas Motel, L.L.C. v. City of Mesquite ex. rel. Bd. of Adjustment*, 63 F.4th 323, 329–30 (5th Cir. 2023) (noting preclusion requires a judgment which "settles all rights adjudicated between the parties." (citation omitted)). Based on this procedural posture, district courts across the country

have expressly declined to grant petitioners relief based on the ICWC Order. *Aguirre Onate, v. Gantt*, No. CIV-26-1403-SLP, 2026 WL 3006706, at *5 (W.D. Okla. Oct. 6, 2026) (collecting cases).

Finally, the Court notes that the ICWC Order does not create any right for an alien to be released from detention nor, as relevant here, returned if deported. *See ICWC*, 351 F.R.D. at 396–97. "A pending U-visa application does not, standing alone, confer lawful immigration status, prevent enforcement of a final order of removal, or create a statutory entitlement to release from custody." *Flores v. Blanche*, No. CV 26-5446, 2026 WL 2069995, at *2 (D.N.J. July 17, 2026); *see also* 8 C.F.R. § 214.14(f) (the filing of a petition for qualifying family member "has no effect on ICE's authority to execute a final order"); 8 C.F.R. § 241.6(a) (a request for a stay of removal does not "delay removal or relieve the alien from strict compliance with any outstanding notice to surrender for deportation or removal"). Even to the extent that the ICWC order granted relief to specific named individuals who had been removed, it only enjoined the government from preventing their re-entry and did not order the government to return them. *See ICWC*, 351 F.R.D. at 397. The Court is without authority to award Petitioner's Writ, but it nonetheless remains doubtful that her *ICWC* claim entitles her to habeas relief.

## IV. CONCLUSION

For the reasons above, Respondents' Motion to Dismiss (Dkt. No. 14) is **GRANTED** and Petitioner's Writ of Habeas Corpus (Dkt. No. 1) **is DISMISSED WITHOUT PREJUDICE**. Petitioner's Motions for an Order to Show Cause and Motion for Temporary Restraining Order (Dkt. Nos. 3, 9, 18) are **DENIED AS MOOT**. The Court will enter Final Judgment under separate cover. *See* Fed. R. Civ. P. 58(a)

It is so **ORDERED**.

**SIGNED** October 23, 2026.

Marina Garcia Marmolejo
United States District Judge